MERIT MACHINE MANUFACTURING CORPORATION, Plaintiff, *v.* THE DE VINNE-HALLENBECK CO., INC., Defendant.

First Department, November 29, 1929.

*William R. Hill,* for the plaintiff.

*Andrew F. Van Thun, Jr.,* of counsel [*Frank A. Kister,* attorney], for the defendant.

FINCH, J. This is a submitted controversy. The facts are thereby agreed upon and the only question at issue is whether the defendant, in fulfilling a second and third order of the plaintiff for printed parchment sheets, should have used alkali-proof ink as defendant did when it printed the sample and as it did when it fulfilled the first order of the plaintiff. The printed parchment sheets were of a two-color, trade-marked design, and, when sewn to a folded flannel containing a chemical substance, constituted a steam-oil pad used in hair-waving machines to create permanent waves. The chemical substance is secret, remains inactive when dry but becomes chemically active when moistened. When the moistened flannel portion of the pad comes into contact with non-alkali-proof substances, such as a non-alkali-proof ink, the activity of the chemical causes the ink to blur, destroys and renders the pad useless. The defendant did not know of the foregoing facts except that the pads were to be dipped in water and the use for which plaintiff desired the said parchment sheets. Before proceeding with the work under the first order, the defendant prepared a printed sample, gummed so that it might be attached to the pad, and submitted the same to the plaintiff. The plaintiff tested this printed and gummed sample submitted by the defendant and found the ink to be both waterproof and alkali-proof. Plaintiff then informed the defendant that it had tested the sample, found it O. K. and returned the same to the defendant, indorsed as follows: " Color O. K." Plaintiff did not inform the defendant of the nature of the test nor disclose to the defendant that it also tested the quality of the ink used and determined the same to be alkali-proof. The ink employed by the defendant was both waterproof and alkali-proof and conformed to the colors specified by the plaintiff. The use by defendant of alkali-proof ink in submitting the sample and in connection with the performance of the first order under the contract was purely accidental and there is no difference in cost between alkali-proof and non-alkali-proof ink. Later the plaintiff gave to the defendant on the same day a second and a third order, the description of the sheets ordered being, " 500,000 sheets parchment paper printed as on #1783 " (which was the number of the first order). The

description in the third order, given the same day, was " 3,000,000 sheets parchment paper printed as in accordance with verbal instructions this date, and made in accordance with our order #1783." These two orders were duly accepted by the defendant. The defendant immediately commenced the printing and manu- facture of the parchment sheets under the second and third orders, employing the same quality of vegetable parchment paper accord- ing to the identical design furnished by the plaintiff and printed the parchment sheets of the same two colors, and the work under the two latter orders was identical with the work under the first order, except that the defendant while using waterproof ink did not use alkali-proof ink. The plaintiff did not know that the ink used in fulfilling the second and third orders was non-alkali-proof and only discovered this fact after the sheets were received. The plaintiff could not have discovered by mere inspection that non- alkali-proof ink had been used by the defendant.

If the plaintiff is correct in its contention, the damages suffered by it are agreed upon and conversely with the defendant.

Upon the foregoing facts the plaintiff is entitled to judgment. There is no dispute about the quality of the materials constituting the sample submitted. Nor is there any question, so far as the issue here is concerned, about the materials delivered pursuant to the first order. The sample was the basis of the order and it limited the words of the contract so that the order must be in accordance with the sample. What theretofore had been perhaps loosely worded and ambiguous became thereby precise and more definite. Where the language of the order is too broad or where there is a lack of exact specification as to details, ambiguity may arise, yet when a sample is submitted and approved, the order is thus delimited and the ambiguity removed through the sample in the same way as if the order had been correspondingly confined by containing more exact terms of description. The foregoing rule was recognized in *Zabriskie* v. *C. V. R. R. Co.* (131 N. Y. 72) where the order was for "Powelton coal of the same quality and kind as furnished you during the past year," and it was held to mean not only Powelton coal but Powelton coal of the same quality and kind as that delivered in the previous year. In addition the court pointed out that a sale by sample often sets up more clearly a definite standard than if an attempt had been made to accomplish the same through the use of corresponding language, the court saying: " While the term ' Powelton coal ' may be said to be a descriptive term merely, when it is said that the coal was to be Powelton coal of the same quality and kind as that delivered in the previous year, it goes beyond mere words of description and refers to the intrinsic value

of the goods sold in language which cannot be misunderstood * * *. A contract of sale which points out a known and ascertainable standard by which to judge the quality of goods sold is, for all practical purposes, a sale by sample."

In the case at bar the fact that the ink used in the sample was alkali-proof determined the quality of the ink which should have been used in filling the orders.

It is impossible to see the force in the argument used by the defendant that it was excused because its failure to live up to the sample in the use of a non-alkali-proof ink was accidental. The answer is that the plaintiff was entitled to its contract, which was to have the goods in accordance with the sample and that a failure by the defendant so to perform is not excused, whether the non-performance was by design or accident.

It follows that, in accordance with the submission, plaintiff is entitled to judgment for the sum of $1,896.96 with interest from April 23, 1928, without costs, less the amount due defendant under the first order dated January 4, 1928, being the sum of $1,679.30 with interest on $1,025 from March 30, 1928, and interest on $654.30 from April 12, 1928.

DOWLING, P. J., MERRELL, McAVOY and PROSKAUER, JJ., concur.

Judgment directed for plaintiff as indicated in opinion, without costs. Settle order on notice.